

FILED

Oct 27 2017, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ruth Ann Johnson
Deborah Markisohn
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| T.H.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 27, 2017<br><br>Court of Appeals Case No.<br>49A02-1703-JV-518<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn Moores, Judge<br>The Honorable Geoffrey Gaither, Magistrate<br><br>Trial Court Cause No.<br>49D09-1607-JD-1198 |

**May, Judge.**

[1]     T.H. appeals his adjudication as a delinquent child based on the trial court finding he had committed an act that, if committed by an adult, would be Class

A misdemeanor criminal mischief.[1] T.H. argues the State failed to prove he committed the $750 in damages required for the Class A misdemeanor finding. We agree and order the trial court to correct its records to indicate T.H.'s adjudication was based on his commission of an act that would be Class B misdemeanor criminal mischief if committed by an adult.

# Facts and Procedural History

In the second half of July 2016, T.H. threw a brick through the passenger side window of Maria Castro's 2006 Toyota Sienna. T.H.'s mother saw him throw the brick and immediately called the police. T.H. was arrested and taken to the Juvenile Detention Center. On July 25, 2016, the State filed a delinquency petition alleging T.H. had committed an act that, if committed by an adult, would be Class A misdemeanor criminal mischief:

> On or about the 22nd day of July, 2016, said child did recklessly, knowingly or intentionally damage or deface the property of Maria Castro . . . by having thrown an object which broke Castro's car window, in an amount greater than seven hundred fifty dollars ($750) but less than fifty thousand dollars ($50,000).

(Appellant's App. Vol. II at 16.)

After an informal adjustment failed, the court held a fact-finding hearing as to the allegation. The State called Castro, who testified she owned a 2006 Sienna

---

[1] Ind. Code § 35-43-1-2 (2016).

and, on July 22, 2016, "the window on the passenger side was broken and there was a big rock- in fact, it scratched the dashboard of the vehicle[.]" (Tr. at 33.) Castro explained she took the car to a Toyota dealership between Lafayette Road and Georgetown Road and asked for an estimate for repair of the damage, and then she returned later to get the car and the estimate. When asked whether she had the vehicle repaired, she testified: "They just put the glass on because my husband needed to work[.]" (*Id*. at 36.) She did not know how much that repair had cost or where the vehicle had been repaired.

[4] Counsel for T.H. then cross-examined Castro about the estimate, pointing out numerous irregularities that called into question the validity of the estimate. The trial court found T.H. had committed criminal mischief that caused more than $750 in damages, which would have been a Class A misdemeanor, and adjudicated him a juvenile delinquent. The trial court did not issue an order of restitution, choosing instead "to release the records for the purpose of civil litigation." (*Id.* at 53.)

# Discussion and Decision

[5] When an appellant challenges the sufficiency of evidence to support a trial court's findings, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in

determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[6] The trial court found T.H. committed Class A misdemeanor criminal mischief, which is defined as:

> A person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent commits criminal mischief, a Class B misdemeanor. However, the offense is:
>
> > (1) a Class A misdemeanor if the pecuniary loss is at least seven hundred fifty dollars ($750) but less than fifty thousand dollars ($50,000)[.]

Ind. Code § 35-43-1-2(a) (2016). T.H. acknowledges he committed Class B misdemeanor criminal mischief when he threw the brick through the window of Castro's car, but he challenges the court's finding that he committed more than $750 in damage to that car.

[7] The State asserts we need not address T.H.'s argument because, regardless whether he committed Class A or Class B misdemeanor criminal mischief, his adjudication as a delinquent child remains intact. This is true; however, the trial court also released the documents regarding T.H.'s adjudication for the

purposes of civil litigation. As the burden of proof is higher in criminal cases than civil cases, T.H.'s adjudication results in a presumption that he committed at least $750 in damages. As his adjudication could have financial consequences, we decline to ignore T.H.'s concerns about the validity of the trial court's finding regarding the monetary damages caused by his delinquent act.

[8] Castro testified the car window was broken and the dashboard was scratched. She also testified that she went to a Toyota dealership "between Lafayette and Georgetown" to get an estimate for repair of the damage, but she could not remember when she got the estimate or when she turned it in to the prosecutor. (Tr. at 34.) Castro did not stay at the dealership while the estimate was prepared; she dropped the car off and went back later for the car and the estimate. Based on her testimony that the document presented was the document she received, the trial court admitted State's Exhibit 1:

## TOMWOOD TOYOTA

4202 LAFFAYETTE ROAD
Indianapolis, IN 46254
Direct- 317-298-9072

## Quotation

DATE 2/22/2016
Quotation #
Customer ID CASTRO

Quotation For: Maria Castro

Quotation valid until:
Prepared by: MARIA

| Serv Advisor | R.O. NUMBER | Vin# | MILEAGE | RO DATE | Payment Method |
|---|---|---|---|---|---|
| | | JTLKT32446464082757 | | | |

| QUANTITY | DESCRIPTION | | LABOR | PART | AMOUNT |
|---|---|---|---|---|---|
| 1 | LABOR | | $1,100.00 | | $1,100.00 |
| 1 | DASH | 55301-52200BO | | $380.52 | $380.52 |
| 1 | HANDLE GRIP | 74811-52010BO | | $19.62 | $188.51 |
| 1 | DOOR PANEL | 67610-5CB10K1 | | $427.97 | $19.62 |
| 1 | DOOR GLASS | 68110-52072 | | $248.53 | $427.97 |

| | | |
|---|---|---|
| SUBTOTAL | $ | 2,365.15 |
| TAX RATE | | 7.00% |
| SALES TAX | $ | 71.20 |
| SHOP SUPPLIES | $ | 39.00 |
| TOTAL | $ | 2,475.35 |

If you have any questions concerning this quotation, contact name, phone number, e-mail.

**THANK YOU FOR YOUR BUSINESS!**



(Ex. at 3.)

[9] In his cross-examination of Castro, T.H.'s counsel challenged nearly a dozen aspects of this Exhibit: it is dated five months *prior* to T.H.'s delinquent act; the dealership's name is erroneously written as one word; the phone number calls a private citizen, not the dealership; no quotation number is listed; the VIN# does not match Castro's car; the estimate does not indicate the make, model, or brand of the vehicle; the arithmetic does not add up to the Total; there is no

indication which door glass or door panel was to be replaced; and there is no rate for the labor or explanation of the labor for each repair. In our review of the document, we also noted the address of the dealership is misspelled, the sales tax of 7% is incorrectly calculated, no contact information was included in the designated area at the bottom of the form, and there is no logical way to reconcile the arithmetical disparities that plague the estimate.

[10] Recently, our Indiana Supreme Court modified the standard of review for sufficiency of evidence cases to provide "a narrow failsafe" for cases involving video evidence:

> This rule has since been stated as courts "give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings." *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App. 2012). We find this to be a workable approach that allows for appropriate deference to the trial court unless and until there is a reason such deference is not appropriate. We recognize these situations may be rare. But in those instances, where the video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing. To be clear, in order that the video evidence indisputably contradict the trial court's findings, it must be such that no reasonable person could view the video and conclude otherwise. When determining whether the video evidence is undisputable, a court should assess the video quality including whether the video is grainy or otherwise obscured, the lighting, the angle, the audio and whether the video is a complete depiction of the events at issue, among other things. In cases where the video evidence is somehow not clear or complete or is subject to different interpretations, we defer to the trial court's interpretation.

*Love v. State*, 73 N.E.3d 693, 699-700 (Ind. 2017).

[11] Like video evidence, documents submitted as exhibits are capable of being reviewed *de novo* by an appellate court. *See*, *e.g.*, *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006) ("where a small claims case turns solely on documentary evidence, we review *de novo*, just as we review summary judgment rulings and other 'paper records'"). However, when "the evidence submitted by the parties and evaluated by the trial court was not limited to documents," our review is for clear error. *Indianapolis Convention & Visitors Assn, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 211 (Ind. 1991).

[12] The Exhibit here was rife with error, at best, and likely fraudulent. It included multiple spelling and arithmetic errors, as well as incorrect information regarding the vehicle and its condition, the date of the damage, and the contact phone number. It simply was not credible evidence of Castro's alleged damages. As a result, we hold that the State failed to prove the $750 in damages required to support a true finding of criminal mischief as a Class A misdemeanor if committed by an adult.[2]

---

[2] The State, relying on *Mitchell v. State*, 559 N.E.2d 313 (Ind. Ct. App. 1990), *trans. denied*, asserts "the exact amount of the damages is irrelevant for purposes of proving the pecuniary loss element . . . once the evidence establishes that the damages exceed the threshold amount." (Appellee's Br. at 9.) In *Mitchell*, the defendant drove his grain truck into his own house three times after a fight with his wife. An estimator, employed as such for twenty years, testified that the damages were $11,053.20. We held

> the purpose of presenting evidence on damages is to fulfill an element of a crime: Ind. Code 35-43-1-2(a)(2)(B)(i) criminal mischief exceeding twenty-five hundred dollars ($2,500.00). Once it is established that the amount is over twenty-five hundred dollars ($2,500.00), the exact amount is irrelevant in completing that element of the crime.

The evidence does, however, support a true finding of Class B misdemeanor criminal mischief, as T.H. admitted throwing a brick through the window of Castro's car. We accordingly remand for the court to modify its records to indicate T.H. was adjudicated a delinquent for committing an act that would be Class B misdemeanor criminal mischief if committed by an adult.

# CONCLUSION

As the State failed to provide any credible evidence of the damage T.H. caused to Castro's car, the State failed to prove an essential element of Class A misdemeanor criminal mischief. We accordingly reverse the court's finding that T.H. committed more than $750.00 in damage. We affirm T.H.'s adjudication as a delinquent, but remand for the court to modify its records to indicate T.H. committed an act that would be Class B misdemeanor criminal mischief.

Affirmed and remanded.

---

*Mitchell*, 559 N.E.2d at 314.

Here, in contrast, no witness with twenty years of car repair experience testified as to the amount of damage to Castro's car. Rather, Castro testified to the total damage listed on State's Exhibit 1. Castro testified she was not present when the estimate was produced, and she did not know how or why the document contained the information that it contained. As such, her credibility could not vouch for the credibility of the Exhibit. The Exhibit had to stand or fall on its own merits, and in light of all the errors in the Exhibit, there is no reason to believe this estimate was provided by anyone with any knowledge whatsoever. The exhibit fails to serve as *any* evidence of damages, much less the threshold amount required for a finding of Class A misdemeanor damages. *Mitchell* is inapposite.

Barnes, J., concurs.

Bradford, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

T.H.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 27, 2017

Court of Appeals Case No.
49A02-1703-JV-518

Appeal from the Marion Superior
Court

The Honorable Marilyn A.
Moores, Judge
The Honorable Geoffrey Gaither,
Magistrate

Trial Court Cause No.
49D09-1607-JD-1198

**Bradford, Judge, dissenting.**

Because I disagree with the conclusion reached by the majority, I respectfully dissent.

Review of the transcript demonstrates that the victim, Maria Castro, testified about the damage done to her 2006 Toyota Sienna when T.H. threw a large rock through the vehicle's passenger side window. Castro testified that in addition to breaking the window, the rock scratched the vehicle's dashboard. Castro testified that after being told that she should obtain an estimate relating to the cost to fix the damage, she took the vehicle to a Toyota dealership

located between Lafayette and Georgetown Roads in Indianapolis. Castro left the vehicle at the dealership and was later given an estimate which indicated that it would cost $2475.35 to complete the necessary repairs. T.H.'s defense counsel stated that he had "[n]o objection" to the admission of this estimate. Tr. Vol. II, p. 35.

[18] Defense counsel subsequently questioned Castro on cross-examination about certain alleged inaccuracies in the estimate. These inaccuracies included: (1) the phone number listed on the estimate was not the phone number for the dealership, but instead is the number for a Jeremy Forsyth; (2) there was no "quotation number" listed on the estimate; (3) the VIN number listed on the estimate is incorrect; (4) there was an issue with the spacing of the words "Tom Wood" on the top of the estimate; (5) the arithmetic on the estimate is wrong; (6) the estimate is dated six months before the damage occurred; (7) the estimate did not specify the hourly rate for labor, but rather included a set amount; and (8) the estimate did not identity which door panel or window was damaged. Tr. Vol. II, pp. 38, 39. Castro testified that she was not aware of and could not explain any issues with the estimate. She merely repeatedly indicated that she took the vehicle to the Tom Wood dealership because she was told that she would need to get an estimate of the damage by a "legal institution." Tr. Vol. II, p. 37. Castro further testified that her husband, who works at an auto body shop, has never worked at Tom Wood Toyota and she does not have any personal friends who work or have ever worked at Tom Wood Toyota. Castro additionally indicated that she took the vehicle to a Toyota dealership

Because uh- it is a Sienna and I know it is Toyota vehicle so I asked them to do it because the officer said that I needed to do it if I wanted to be able to make a claim for the damages. I needed to do things through the legal route so … and so I couldn't allow my husband to touch it, he couldn't take it to his work in order to respect the law. He couldn't take it to his job.

Tr. Vol. II, p. 43.

[19] During closing argument, the State acknowledged that defense counsel had attempted to cast "some doubt" on the legitimacy of the estimate. Tr. Vol. II, p. 51. However, the State argued that Castro "testified several times that she went to Tom Wood Toyota to go a legal route." Tr. Vol. II, p. 51.

She did not want to go to some, maybe less reputable auto shop, she went to Tom Wood Toyota because she knew it was a good legal institution because she wanted to do this the right way. This was the estimate that they gave her and she is just trying to recover, to be made whole and she did nothing. [T.H.] came over through no action of her own and threw a rock through her window. She did not ask for this. She is just merely trying to do what is right. She came here today and testified.

Tr. Vol. II, p. 51. For its part, defense counsel argued as followed:

Given the fact that the police officer who inspected the car told Ms. Castro or her son that the window was broken, they didn't mention any other damage and given the fact that the State witness Joanne Bowie looked at the car and saw no other damage, just the broken window and she was very honest person and she was up front and she was the one who called the police. She went to the lady to tell her what had happened. She offered

to pay for the reasonable amount of damages. She offered to go to a glass repair shop with her. Those things combined with the horrid fraudulent quotation that has been presented. A real legitimate, quotation or estimate from a real legitimate dealership repair shop would not have made mistakes in the math, a computer would do all of that. They don't make mistakes. It would have what the labor rate was. It would identify what door panel. It would identify what doors [sic] glass. It probably would identify the handle grip or whatever that is. It would have actually [sic] the shops [sic] actual phone number on it and not the phone number of some random individual, who may not be so random. We don't know. It would give a quotation number and it would have the VIN# correct. As the State merely proceeded with just the broken window, we were looking at less than five-hundred dollars damage and a B misdemeanor. That is as far as the court should go with this.

Tr. Vol. II, pp. 52-53.

[20] The record clearly reveals that defense counsel raised concern about the legitimacy of the estimate before the trial court and questioned Castro at length about the numerous errors or inconsistencies contained therein. Defense counsel argued that given the issues with the estimate, it could not be relied on as accurate. The juvenile court, acting as the trier-of-fact, was free to believe all, some or none of the evidence presented by the parties, including the estimate.

[21] Most importantly, in order to prove that T.H. committed what would have been Class A misdemeanor criminal mischief, the State did not have to prove the exact amount of damage caused by T.H., just that T.H. caused at least $750

in damage. Under the applicable standard of review, we consider both the evidence most favorable to the judgment and the reasonable inferences which can be drawn therefrom. *See Graham v. State*, 713 N.E.2d 309, 311 (Ind. Ct. App. 1999) (providing that when considering the sufficiency of the evidence, an appellate court neither reweighs the evidence nor judges the credibility of witnesses, but rather examines the evidence most favorable to the judgment together with all reasonable inferences which can be drawn therefrom), *trans. denied*. It is common knowledge that auto repairs are often expensive. The juvenile court, acting as the trier-of-fact, determined that the State met its burden of proving that the damage to Castro's vehicle was at least $750. When the sole focus is on the amount and quality of the estimate, we are distracted from our appellate review of the ultimate question, which is whether the evidence is sufficient to show damages of at least $750. Given the documentary evidence coupled with Castro's testimony, I would conclude that the evidence is easily sufficient to sustain the juvenile court's adjudication.[3] I therefore would vote to affirm the judgment of the juvenile court.

---

[3] I believe that the Indiana Supreme Court's opinion in *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017), makes it clear that the approach creating the "narrow failsafe" discussed therein applies only to video evidence. I would not expand *Love*'s holding to apply to this case.