ATTORNEY FOR APPELLANT

Jeffrey E. Kimmell
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



FILED
May 11 2017, 11:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 71S03-1612-CR-00641

ROYCE LOVE,

*Appellant (Defendant below),*

v.

THE STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D03-1308-FD-000653
The Honorable Jerome Frese, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-1511-CR-02009

**May 11, 2017**

**David, Justice.**

This is a sufficiency case that turns, in part, on video evidence. At issue is the appropriate standard of review for this video evidence; more specifically, when does reviewing video evidence become impermissible reweighing? This Court has previously addressed video evidence in Robinson v. State, where we observed that: "[w]hile technology marches on, the appellate standard of review remains constant." 5 N.E.3d 362, 365 (Ind. 2014). Today, however, we write to

supplement our standard of review for video evidence to add a narrow failsafe. We hold that Indiana appellate courts reviewing the sufficiency of evidence must apply the same deferential standard of review to video evidence as to other evidence, unless the video evidence indisputably contradicts the trial court's findings. A video indisputably contradicts the trial court's findings when no reasonable person can view the video and come to a different conclusion.

The case before us does not present such a set of circumstances. That is, the video at issue does not indisputably contradict the trial court's findings. As such, we affirm the trial court.

**Facts and Procedural History**

In August 2013, the South Bend police observed a white van driven by Defendant, Royce Love, drive through a red light. Police began following Love and saw him disregard a stop sign. They then initiated a traffic stop, but Love did not stop. Instead, he drove on, and other officers joined the chase. Police attempted to use their cars to create a roadblock, but Love hit one of the police cars and kept going. Eventually, Love was stopped in an alley with the use of a spike or stop sticks which were used by police to deflate Love's tires.

Love exited his vehicle. He was ordered to the ground. He then raised his hands and got down on all fours. He eventually lay face down on the ground. Officers used tasers and a police dog to effect Love's arrest.

Love was charged with three counts: 1) resisting law enforcement (based on his fleeing in his vehicle) as a class D felony[1]; 2) battery to a law enforcement animal as a class A misdemeanor; and 3) resisting law enforcement (based on forcibly resisting after the vehicle was stopped) as a class A misdemeanor. [2]

---

[1] On appeal, Love does not challenge this count.
[2] The State also charged Love with Count IV, operating a vehicle while intoxicated as a class A misdemeanor, but this charge was dismissed prior to trial.

During a jury trial, several police officers testified that Love did not comply with the officers' commands after he exited his vehicle. Police testified that because Love was uncooperative, police deployed a taser, twice, but that Love pulled the taser probes out, necessitating deployment of a police dog. Police testified that the dog bit Love's right forearm. Love then struck and squeezed the police dog, causing the dog to yelp. Police also observed a bite ring on the dog's head after they struck Love a number of times to secure the dog's release.

The State also introduced a DVD recording of the police pursuit of Love's van, as taken from one of the officer's cars. This video was admitted without objection and played for the jury.

Love's version of the events is very different. He testified that an officer approached his vehicle and told him to "get the F out of the car" and that he got out of his vehicle, put his hands up and laid face down on the ground. (Appellant's Appendix at 234.) He further testified that he put his hands up to be cuffed, but the officers tased him, kicked him and deployed the dog who bit him. He maintains that he only tried to protect himself from the dog, that he basically hugged the dog and that he wasn't trying to hurt it.

Love also introduced a DVD recording from an officer's in-car camera. It showed the scene in the alley where Love was eventually stopped and arrested by police. It was admitted without objection and played for the jury.

The jury found Love guilty as charged. He was ultimately sentenced to consecutive one-year sentences with all of the time suspended to supervised probation. He appealed.

In a split 2-1 published opinion, the Court of Appeals reversed Love's convictions. Love v. State, 61 N.E.3d 290, 292 (Ind. Ct. App.), transfer granted, opinion vacated, 64 N.E.3d 1207 (Ind. 2016). Relying on a Texas appellate court opinion it found instructive, Carmouche v. State, 10 S.W.3d 323 (Tex. Crim. App. 2000), the majority found that when faced with video evidence to review, an appellate court may not reweigh the evidence and must instead "give almost total deference to the trial court's factual determinations *unless the video recording indisputably contradicts the trial court's findings*." Love, 64 N.E.3d at 298 (citing State v. Houghton, 384

3

S.W.3d 441, 446 (Tex. App. 2012) (emphasis added)).   Here, the majority found that the video unambiguously showed Love cooperated with police almost immediately.

Judge Pyle dissented.   He would have affirmed the trial court. He believes that his colleagues impermissibly reweighed the evidence.  He interpreted the video differently and argued that Love walked to the rear of the vehicle before complying and that he did not remain still. He also stated that the camera does not show everything and thus, the testimony of the witnesses is the only evidence of what happened during the ensuing altercation between Love and police.

The State filed a petition to transfer, which we granted, thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

**Standard of Review**

For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence.  Id.   We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  Id.

**Discussion**

This is a sufficiency case.   We must decide whether the evidence the State presented at trial is sufficient to sustain Love's convictions for battery of a law enforcement animal and resisting law enforcement.  As for battery of a law enforcement animal, at the time of the offense, Ind. Code § 35–46–3–11(a) provided that "[a] person who knowingly or intentionally. . . strikes, torments, injures, or otherwise mistreats a law enforcement animal . . . commits a class A misdemeanor." (Subsequently amended by Pub. L. No. 158–2013, § 563 (eff. July 1, 2014); and Pub L. No. 168–2014, § 86 (eff. July 1, 2014)). As for resisting law enforcement, at the time of the offense, Ind. Code § 35–44.1–3–1(a)(1) provided that a defendant commits resisting law enforcement as a Class A misdemeanor when he "knowingly or intentionally. . .forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties [.]" (Subsequently amended by

4

Pub. L. No. 158–2013, § 509 (eff. July 1, 2014); Pub. L. No. 168–2014, § 80 (eff. July 1, 2014); and Pub. L. No. 198–2016, § 673 (eff. July 1, 2016)).

An officer is not lawfully engaged in the execution of his duties when he uses unconstitutionally excessive force. Shoultz v. State, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000). Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States Constitution and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Id. at 396.

The State offered evidence by way of testimony from the police officers that Love knowingly struck or mistreated a police animal and that he knowingly and forcibly resisted a police officer while that officer was engaged in his duties as a law enforcement officer. Specifically, five officers testified during trial. They testified that when Love exited his van, he ignored police orders to stop walking away and lie on the ground. They further testified that because of Love's failure to cooperate, they tased him twice. Finally, they testified that after Love pulled the taser probes out, they deployed the police dog that bit Love's forearm and that Love responded by striking the dog, squeezing it, biting its head and causing it to yelp.

For his part, Love testified that he cooperated with police. He testified that police ordered him to get out of the car and he did so, putting his hands up and lying face down on the ground. He argues that the police used excessive force and that he was only trying to protect himself from the dog. Thus, he argues his actions were lawful efforts to protect himself from serious injury and therefore, cannot form the basis for his convictions.

Resolution of this issue turns, in part, on interpretation of the video evidence in this case because Love argues that, contrary to police testimony, the video shows he cooperated with police. This Court recently addressed video evidence and the standard of review in Robinson v. State, 5 N.E.3d 362 (Ind. 2014). In Robinson, the parties also disputed the significance of the video

5

evidence, and we observed that: "[w]hile technology marches on, the appellate standard of review remains constant." Robinson, 5 N.E.3d at 365. We added:

> [w]e do not believe, however, as some of our colleagues in other jurisdictions do, that the very act of *reviewing* video evidence constitutes impermissible appellate reweighing. State v. Rascon, No. 30,561, 2011 WL 704472 at *2 (N.M. Ct. App. Jan. 14, 2011) cert. denied, 2011–NMCERT–003, 150 N.M. 619, 264 P.3d 520 (2011) (table) (declining even to review a video of a traffic stop in a reasonable suspicion case on the ground that doing so would amount to reweighing the evidence). Rather, we consider video evidence admitted in the trial court to be a necessary part of the record on appeal, just like any other type of evidence.
>
> * * *
>
> And just like any other type of evidence, video is subject to conflicting interpretations. In Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007), Justice Scalia, writing for the majority of the Court, described a videotape as showing "a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." Id. at 380, 127 S. Ct. 1769. Based largely on his impression of that video, he concluded police were justified in using deadly force to end the pursuit. Id. at 386, 127 S. Ct. 1769. Justice Stevens, dissenting, described the very same video as "hardly the stuff of Hollywood" and opined it did not show "any incidents that could even be remotely characterized as 'close calls.'" Id. at 392, 127 S. Ct. 1769 (Stevens, J., dissenting).

Robinson 5 N.E.3d at 366. Scott highlights the split among courts regarding the standard of review that should apply to video evidence on appeal, with some courts, like ours, applying a deferential standard of review and some applying a *de novo* standard. For instance, the Supreme Judicial Court of Massachusetts adopted a *de novo* standard for video evidence:

> we accept the judge's subsidiary findings of fact unless not warranted by the evidence and the judge's ultimate findings, while open for review, are afforded substantial deference. . . [H]owever, [when] the judge's findings are based almost exclusively on the videotape of [defendant's] confession, and we are in the same position as the [trial] judge in viewing the videotape.

Com. v. Novo, 812 N.E.2d 1169, 1173 (Mass. 2004) (internal quotations and citations omitted).

6

This Court has declined to adopt a *de novo* standard for video evidence. Instead, we give the trial court's decision great deference. However, this does not mean we do not review or consider video evidence. In <u>Robinson,</u> we noted that our appellate courts are permitted to review the video evidence, just like any other evidence. <u>Robinson</u> 5 N.E.3d at 366. The question <u>Robinson</u> did not squarely address is when does review of video evidence become impermissible reweighing. For there may be times when reasonable minds could disagree about interpretation of the video evidence or times when the video is unclear or does not capture the entire event. However, there may be other times when objective video evidence is complete and indisputably contradicts the other evidence in the case. For example, there could be a situation where the issue is whether a defendant consented to a search. The police testify that defendant consented to the search; however, on the video of the events, defendant indisputably says "no" when police ask if they may search his vehicle. In such an instance, it would not be appropriate to ignore the video evidence and only look to the evidence supporting the verdict citing the deferential standard of review.

As the Supreme Court of Florida recently and aptly stated:

> We respect the authority and expertise of law enforcement officers, and thus rely on an officer's memory when necessary. But we would be remiss if we failed to acknowledge that at times, an officer's human recollection and report may be contrary to that which actually happened as evinced in the real time video. This is the reality of human imperfection; we cannot expect officers to retain information as if he or she were a computer. Therefore, a judge who has the benefit of reviewing objective and neutral video evidence along with officer testimony cannot be expected to ignore that video evidence simply because it totally contradicts the officer's recollection. Such a standard would produce an absurd result.

<u>Wiggins v. Florida Dep't of Highway Safety & Motor Vehicles</u>, 209 So. 3d 1165, 1172 (Fla. 2017).

We agree. Accordingly, we think it is appropriate that there be a narrow failsafe built into our standard of review for video evidence. To that end, we agree with our Court of Appeals that the opinion by the Court of Criminal Appeals of Texas, <u>Carmouche v. State</u>, 10 S.W.3d 323 (Tex. Crim. App. 2000), is instructive. <u>Carmouche</u> involved whether defendant consented to a search. Finding the police testimony that Carmouche gave his consent was contradicted by video evidence, the court noted that "as a general rule, the appellate courts, including this Court, should give almost

7

total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor." Id. at 332. But it added: "[i]n the unique circumstances of this case, however, we decline to give 'almost total deference' to the trial court's implicit findings," noting that "the nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor'" and that, "[r]ather, the videotape presents indisputable visual evidence contradicting essential portions of [the officer's] testimony." Id. It ruled that "[i]n these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because [police] testimony may, by itself, be read to support the Court of Appeals' holding." Id. Accordingly, it vacated a judgment of the Court of Appeals of Texas that Carmouche consented to the search. Id. at 333.

This rule has since been stated as courts "give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings." State v. Houghton, 384 S.W.3d 441, 446 (Tex. App. 2012). We find this to be a workable approach that allows for appropriate deference to the trial court unless and until there is a reason such deference is not appropriate. We recognize these situations may be rare. But in those instances, where the video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing. To be clear, in order that the video evidence indisputably contradict the trial court's findings, it must be such that no reasonable person could view the video and conclude otherwise. When determining whether the video evidence is undisputable, a court should assess the video quality including whether the video is grainy or otherwise obscured, the lighting, the angle, the audio and whether the video is a complete depiction of the events at issue, among other things. In cases where the video evidence is somehow not clear or complete or is subject to different interpretations, we defer to the trial court's interpretation.

Turning to the facts of the present case, Love claims that, here, the video evidence (Defendant's Exhibit A) indisputably contradicts the testimony of five police officers and shows him cooperating with police *immediately*. However, the video at issue is dark and it is hard to see much. At some point, we do see Love get down on the ground, but we do not see what happens before he does, nor do we see much of what happens afterwards. It is the moments leading up to

Love's getting on the ground and what ensued afterwards with tasers and the police dog that are critical to determining what happened in this case. While Love claims the video indisputably shows he cooperated immediately, this is simply not the case. The video does not capture his exit from his vehicle. It also does not show what happens with the taser or police dog. We only have Love's testimony and the officers' testimony in that regard. This is not a case where the video indisputably contradicts the testimony of police nor where no reasonable person could look at the video and think anything other than Love cooperated immediately. Instead, we have the conflicting testimony of Love and the officers and a video that does not serve to irrefutably contradict police testimony. As such, we defer to the trial court's factual determinations regarding weight of the evidence and credibility of the witnesses.

## Conclusion

We hold that for video evidence, the same deference is given to the trial court as with other evidence, unless the video evidence at issue indisputably contradicts the trial court's findings. A video indisputably contradicts the trial court's findings when no reasonable person can view the video and come to a different conclusion.

Because the video evidence at issue does not indisputably show Love's compliance with police, and there is other evidence that sufficiently established the elements of the crimes, we affirm Love's convictions for battery of a law enforcement animal and resisting law enforcement as class A misdemeanors.

Rush, C.J., Rucker, Massa and Slaughter, J.J., concur.

9