Bradford, Judge, dissenting. Because I disagree with the conclusion reached by the majority, I respectfully dissent. Review: of the transcript demonstrates that the victim, Maria Castro, testified about the damage done to her 2006 Toyota Sienna when T.H. threw a large rock through the.vehicle’s.passenger side window. Castro testified that in addition to breaking the window, the rock scratched the vehicle’s dashboard. Castro testified that after being told that she should obtain an estimate relating to the cost to fix the damage, she took the vehicle to a Toyota dealership located between Lafayette and Georgetown Roads in Indianapolis. Castro left the vehicle at the dealership and was later given an estimate which indicated that it would cost $2475.35 to complete the necessary repairs. T.H.’s defense counsel stated that he had “[n]o objection” to the admission of this estimate, Tr. Vol. II, p. 35. . . Defense counsel subsequently questioned Castro on cross-examination about certain alleged inaccuracies in the estimate. These inaccuracies included: (1) the phone number listed on the estimate was not the phone number for the dealership, but instead is the number for a Jeremy Forsyth; (2) there was no “quotation number” listed on the estimate; (3) the VIN number listed on the estimate is incorrect; (4) there was an issue with the spacing of the words “Tom Wood” on the top of the estimate; (5) ’the arithmetic1 on the estimate is' wrong; (6) the estimate is dated six' months before the damage occurred; (7)' the estimate did not specify the hourly rate for labor, but rather included a set amount; and (8) the estimate did not identity which door panel or window was damaged.’ Tr. Vol. II, pp. 38, 39. Castro testified that she was not aware of and could not explain any issues with the estimate. She merely repeatedly indicatéd that she took the vehicle to the Tom Wood dealership because she was told that she would need to get an estimate of the damage by a “legal institution.” Tr. Vol. II, p. 37. Castro further testified that' her husband, who works at 'an auto body shop; has never worked at Tom Wood Toyota and she does not have any personal friends who work or have ever worked at Tom Wood Toyota. Castro additionally indicated that she took the vehicle to a Toyota dealership Because uh—it is a Sienna and I know it is Toyota vehicle so I asked them to do it because the officer said that I needed to do it if I wanted , to be able to make a claim for the damages. I needed to do things through the legal route so' ... and so I couldn’t allow my husband to touch it, he couldn’t take it to his work in order to respect the law. He couldn’t take it to his job. Tr. Vol. II, p. 43. • During closing argument, the State acknowledged that defense counsel had attempted to cast “some doubt” on the legitimacy of the estimate. Tr. Vol. II, p. 51. However, the State argued that Castro “testified several times that she went to Tom Wood Toyota to go a legal route.” Tr. Vol. II, p, 51. She did not want to go to some, maybe less reputable auto shop, she went to Tom Wood Toyota because she knew it was a good legal institution because she wanted to do this the right way. This was the estimate that they gave her and she is just trying to recover, to be made whole and she did'nothing. [T.H.] came over through no-action of her own and threw a rock through her window. She did not ask for this. She' is just merely trying to do what is right. She came here today and testified. Tr. Vol. II, p. 51. Por its part, defense counsel argued as followed: Given the fact that the police officer who inspected the car told Ms. Castro or her son' that the window was broken, they didn’t mention any other damage and given the fact that ■ the- State witness Joanne Bowie looked at the car and saw no other damage, just the broken window and she was very honest person and she was up front and-she was the one who called the police; She went-to the lady to tell her what had happened. She offered to pay for the reasonable amount of damages. She offered to go to a glass repair shop with her. Those things combined with the horrid fraudulent quotation that has been presented. A real legitimate, quotation or estimate from a real legitimate dealership repair shop would not have made mistakes in the math, a computer would do all of that. They don’t make mistakes. It would have what the labor rate was. It would identify what door panel. It would identify what doors [sic] glass. It probably would identify the handle grip or whatever that is. It would have actually [sic] the shops [sic] actual phone number on it and not the phone number of some random individual, who may not be so random. We don’t know. It would give a quotation number and it would have the VIN# correct. As the State merely proceeded with just the broken window, we were looking at less than'five-hundred dollars damage ánd a B ■ misdemeanor. That is as far as the court should go with this. Tr. Vol. II, pp. 52-53. The record clearly reveals that defense counsel raised concern about the legitimacy of the estimate before the trial court and questioned Castro at length about the numerous errors or inconsistencies contained therein. Defense counsel argued that given the issues with the estimate, it could not be relied on as accurate. The juvenile court, acting as the trier-of-fact, was free to believe all, some or none of the evidence presented by the parties, including the estimate. Most importantly, in order to prove that T.H. committed what would have been Class A misdemeanor criminal mischief, the State did not have to prove the exact amount of damage caused by T.H., just that T.H. caused at least $750 in.damage. Under the applicable standard of review, we consider both the evidence most favorable to the judgment and the reasonable inferences which can be drawn therefrom. See Graham v. State, 713 N.E.2d 309, 311 (Ind. Ct. App. 1999) (providing that when considering the sufficiency of the evidence, an appellate court neither reweighs the evidence nor judges the credibility of witnesses, but rather examines the evidence most favorable to the judgment together with all reasonable inferences which can be drawn therefrom), trnns. denied. It is common knowledge that auto repairs are often expensive. The juvenile court, acting as the trier-of-faet, determined that the State met its burden of proving that the damage to Castro’s vehicle was at least $750. When the sole focus is on the amount and quality of the estimate, we are distracted from our appellate review of the ultimate question, which is whether the evidence is sufficient to show damages of at least $750. Given the documentary evidence coupled ■ with Castro’s testimony, I would conclude that the evidence is easily sufficient to sustain the juvenile court’s adjudication.[3] I therefore would vote to affirm the judgment of the juvenile court. . I believe that the Indiana Supreme Court's opinion in Love v. State, 73 N.E.3d 693, 699 (Ind. 2017), makes it clear that the approach creating the “narrow failsafe” discussed therein applies only to video evidence. I would not expand Love’s holding to apply to this case.