## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tara D. Parham,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 13, 2018<br><br>Court of Appeals Case No.<br>18A-CR-004<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia A. Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1703-CM-9701 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Tara Parham appeals her conviction for resisting law enforcement, arguing that her resistance was a justified response to an officer's unlawful use of excessive force. Because the evidence is sufficient to support the trial court's conclusion that the officer was lawfully engaged in the execution of his duties when Parham resisted, we affirm her conviction.

# Facts and Procedural History

[2] On March 9, 2017, the Indianapolis Metropolitan Police Department SWAT team, including Officer Brett Bousema, executed a high-risk, no-knock search warrant for drugs, money, and guns at a house located at 4305 N. Irvington Avenue in Indianapolis. According to Officer Bousema, a full-time SWAT team officer, high-risk, no-knock search warrants are used for locating a person who has committed a robbery or murder, or when searching for evidence of guns or drugs. To ensure officer safety during the execution of the warrant, the IMPD SWAT team planned to secure the area surrounding the house. This included detaining people outside the house because the house was believed to be associated with drugs. Houses associated with drugs "have a lot of activity . . . suspects, or customers that are coming and going outside those homes, frequently when we arrive." Tr. p. 6.

[3] When the IMPD SWAT team arrived, sometime between 6:00 and 8:00 p.m., there were "at least five or six people" outside the house. *Id.* at 9. Officer

Bousema, equipped with tactical gear and dressed in full police uniform, approached the house and used a thirty-five-pound cylinder-shaped ram to force the door open. After opening the door, Officer Bousema heard someone yelling and turned to see who it was. It was Parham standing in the small, shared yard between the driveway of the house located at 4305 N. Irvington Avenue and the driveway of her mother's house next door. Parham was yelling "something about the police putting their hands on her." *Id.* at 10. Officer Bousema saw that no other officers could deal with her because of the number of people outside the house, so he approached Parham with his weapon drawn. As he approached Parham, Officer Bousema ordered her to "get on the ground." *Id.* at 11. The other officers were able to get everyone else outside the house on the ground. But Parham ignored Officer Bousema's command and instead continued yelling. Officer Bousema told Parham at least three times to "get on the ground," but each time she refused to comply. *Id.* at 13.

[4] At this point, Officer Bousema grabbed Parham's jacket and pulled her to the ground. After Parham went to her hands and knees, she tried to stand up and Officer Bousema pushed her onto her right side. Once Parham was on her side, Officer Bousema noticed a gun in her right-back waistband. Officer Bousema holstered his gun and used his weight to keep Parham on her side so he could remove Parham's gun from her waistband. Officer Bousema tossed her gun a few feet away and pulled Parham in the opposite direction. Officer Bousema continued using his body weight to keep Parham on the ground because she was still attempting "to twist and pull away, get away from [Officer Bousema],

and stand up." *Id.* at 14. Officer Bousema told Parham to stop resisting and put her hands behind her back, but, once again, she refused to comply.

[5] After Parham continued to struggle against his efforts to get her on her stomach, Officer Bousema hit her three times with his fist in her midsection "to get pain compliance." *Id.* at 15. But Parham still did not stop; rather, she continued screaming and tried to get up again using her legs and hands to push off the ground and twist out from underneath Officer Bousema. Eventually Officer Bousema was able to get Parham onto her stomach and get her arms behind her back. Another officer approached and handed Officer Bousema zip ties to detain Parham. Officer Bousema was able to get one of Parham's hands in the restraints but then she pulled her other hand away and tucked it underneath her. Officer Bousema pulled Parham's hand behind her back again before he was finally able to get both of her hands in the restraints.

[6] The State charged Parham with resisting law enforcement, as a Class A misdemeanor.[1] After a bench trial, the trial court found Parham guilty.

[7] Parham now appeals.

---

[1] Parham was also charged with carrying a handgun without a license, as a Class A misdemeanor, but the State dismissed that charge before trial.

[8]     Parham argues that there is insufficient evidence to sustain her conviction. When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We will only consider the evidence supporting the judgment and any reasonable inferences that can be drawn from the evidence. *Id.* A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* Finally, we consider conflicting evidence most favorably to the trial court's ruling. *Id.* at 1066-67.

[9]     The State alleged that Parham knowingly or intentionally forcibly resisted, obstructed, or interfered with a law-enforcement officer while the officer was lawfully engaged in the execution of his duties. Appellant's App. Vol. II p. 21; *see also* Ind. Code. § 35-44.1-3-1(a)(1). Parham does not dispute that she forcibly resisted. *See* Appellant's Br. pp. 6-7, 13-14. Rather, she argues that her resistance was a justified response to Officer Bousema's unlawful use of excessive force. *Id.* at 10. [2]

---

[2] In certain parts of her brief Parham suggests that her resistance was merely passive. *See* Appellant's Br. pp. 9, 14. However, she admits that she "attempted to stand up," "attempted to twist her body by her hips and legs to try and get out from underneath [Officer Bousema]," "tried to use her legs and hands to push off the ground as she twisted to try to get out from underneath the officer's weight," and "attempted to place one hand underneath her body [as] [Officer Bousema] placed her in zip tie handcuffs." *Id.* at 6-7. This is more

[10] An officer is not lawfully engaged in the execution of his duties when he uses unconstitutionally excessive force. *Love v. State*, 73 N.E.3d 693, 697 (Ind. 2017). Claims that law-enforcement officers have used excessive force are analyzed under the Fourth Amendment to the United States Constitution and its reasonableness standard. *Id.* The reasonableness inquiry in an excessive-force case is an objective one; the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* When law-enforcement officers execute a search warrant, safety considerations require that they secure the premises, which may include detaining current occupants. *Shotts v. State*, 53 N.E.3d 526, 536 (Ind. Ct. App. 2016), *trans denied*. By taking "unquestioned command of the situation," the officers can search without fear that occupants, who are on the premises and able to observe the course of the search, will become disruptive, dangerous, or otherwise frustrate the search. *Id.* The word "occupant" means anyone who is in the immediate vicinity of the premises to be searched when the search is executed. *Id.*

[11] In this case, Officer Bousema could lawfully detain Parham because she was in the immediate vicinity of the house located at 4305 N. Irvington Avenue when officers were executing a high risk, no-knock search warrant.[3] The question is

---

than enough to prove forcible resistance. *See Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013); *see also Lopez v. State*, 926 N.E.2d 1090, 1094 (Ind. Ct. App. 2010), *trans. denied.*

[3] Parham briefly suggests that her yelling about police "putting hands on her" was protected political speech. Appellant's Br. p. 12 n.4. However, Parham does not make an argument as to why her yelling is a defense to

whether the steps Officer Bousema took to detain Parham were objectively reasonable in light of the facts and circumstances confronting him. Officer Bousema testified that it was dark outside when he arrived. Immediately after opening the door of the house, he heard Parham yelling and saw her standing approximately fifty feet away from him. Officer Bousema approached Parham and asked her at least three times to get on the ground, but she did not comply. Instead, Parham continued yelling and refused to comply. Officer Bousema had to pull Parham to the ground, remove her gun, hit her three times with his fist in her midsection, and cuff her before she eventually complied. During the entire incident, Parham struggled with Officer Bousema. The trial court found that the steps Officer Bousema took to detain Parham were reasonable because there were multiple people around while he was executing a high-risk, no-knock search warrant at night, looking for evidence of drugs, money, and guns, and the "[officers] don't know who else out there may have a weapon that could [be] use[d] . . . against them." Tr. pp. 34, 67, 69. This evidence is sufficient to support the trial court's conclusion that Officer Bousema was lawfully engaged in the execution of his duties when Parham resisted. Therefore, we affirm Parham's conviction for resisting law enforcement.

[12] Affirmed.

Riley, J., and Kirsch, J., concur.

---

resisting law enforcement. Notably, the case Parham cites, *Jordan v. State*, 37 N.E.3d 525 (Ind. Ct. App. 2015), addresses how political speech may be a defense to disorderly conduct, not resisting law enforcement.