## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2019, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paul Lundy,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 27, 2019

Court of Appeals Case No.
18A-CR-1370

Appeal from the Hendricks
Superior Court

The Honorable Stephenie LeMay-Luken, Judge

Trial Court Cause No.
32D05-1705-F3-21

**Najam, Judge.**

## Statement of the Case

Paul Lundy appeals his conviction for robbery, as a Level 3 felony, and his three convictions for contributing to the delinquency of a minor, as Class A misdemeanors, following a jury trial. Lundy raises a single issue on appeal, namely, whether the State presented sufficient evidence to support his convictions. We affirm Lundy's convictions, but we remand with instructions for the trial court to correct a sentencing error.

## Facts and Procedural History

S.C. and C.R., who were both teenagers in Avon, met through an online messaging application. The two had never met in person, but they had been texting each other for a few months. On May 30, 2018, C.R. texted S.C. S.C. was "bored," so she decided to hang out with C.R. Tr. Vol. III at 15. C.R. went over to S.C.'s house, where he met S.C. and S.C.'s friend E.M. The three teenagers played video games and watched movies. The three then decided to meet some other friends at a neighborhood pool. Among the individuals they met at the pool was J.F., Lundy's nephew, who was a long-time friend of both S.C. and E.M. After a while, S.C., C.R., E.M., and J.F. left the pool and went back to S.C.'s house to play video games and listen to music. Later, J.F. left S.C.'s house and returned to the house that he shared with his uncle, Lundy. C.R., E.M., and S.C. remained at S.C.'s house. At some point, E.M. and S.C. "went out to the back porch." Tr. Vol. II at 160.

[3]     After J.F. had left S.C.'s house, he received a phone call from S.C. and E.M. During the call, S.C. and E.M. told J.F. that they had "a plan to get some money." *Id*. at 236. *Id*. J.F. then "automatically" went to talk to Lundy to tell him that C.R. "had money on him and that we're gonna take it." *Id*.

[4]     In the meantime, C.R. was still at S.C.'s house, and S.C. and E.M. were on the back porch. C.R. got bored and decided to leave. When he informed S.C. and E.M. that he planned to leave, they asked C.R. if he would give them a ride to J.F.'s house. C.R. agreed, and C.R. drove his truck while S.C. and E.M. rode as passengers. C.R., who had just met J.F. earlier that day, did not know how to get to J.F.'s house, so S.C. and E.M. gave him directions. S.C. and E.M. directed C.R. to the intersection of Maple Drive and Venable Drive. When C.R. arrived at the intersection, he stopped the car, and S.C. and E.M. told C.R. that they were going to call J.F. to "see which house it was." *Id*. at 163. C.R. was "kinda confused," and he thought it was "odd" that S.C. and E.M. did not have a specific house that they wanted him to stop at and that they needed to call to figure out which house was J.F.'s. *Id*. While C.R. believed that S.C. and E.M. were calling J.F. to determine which house was his, S.C. and E.M. had actually sent a text to J.F. to let J.F. know "that they were there." *Id*. at 236. At that point, Lundy "got ready and then left" J.F.'s house. *Id*.

[5]     After C.R. had parked the car, and while he was waiting for further directions from S.C. and E.M., he saw a man walking toward the car. The man walked up to the car, reached into the window, and pulled the keys out of the ignition. S.C. and E.M. got out of the car and ran down the street in the direction from

which the man had come. The man pointed a small handgun at C.R.'s ribs and demanded that C.R. give him his shoes, cash, and necklace. C.R. complied, and the man walked away.

[6] C.R. immediately called the police. Police officers responded, and they used a police canine to track the man. The canine tracked the man to the house that Lundy shared with J.F. Officers also found S.C., E.M., and J.F. in a vehicle in the driveway of that house. A few days later, officers went to C.R.'s house. Officers showed C.R. a photo array and asked him to identify the man who had robbed him. C.R. identified Lundy from the pictures.

[7] The State charged Lundy with one count of robbery, as a Level 3 felony (Count 1); three counts of contributing to the delinquency of a minor, as Class A misdemeanors (Counts 2-4);[1] and with being a habitual offender (Count 5). The trial court held a bifurcated jury trial on April 2 and 3, 2018. At the conclusion of the first phase of the trial, the jury found Lundy guilty of Counts 1 through 4. Lundy then stipulated to being a habitual offender. The trial court entered judgment of conviction against Lundy on all five counts and sentenced him to an aggregate term of twenty years in the Department of Correction.[2] This appeal ensued.

---

[1] The three teenagers had all pleaded guilty to theft, as a Level 6 felony, for their participation in the offense against C.R.

[2] The trial court sentenced Lundy to twenty years in the Department of Correction for the Level 3 felony conviction and to concurrent terms of 180 days for each of the Class A misdemeanor convictions.

# Discussion and Decision

## *Sufficiency of the Evidence*

[8] Lundy contends that the State failed to present sufficient evidence to support his convictions. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[9] To convict Lundy of robbery, as a Level 3 felony, the State was required to prove that Lundy had knowingly or intentionally taken property from C.R. by using or threatening the use of force while armed with a deadly weapon. Ind. Code § 35-42-5-1(a) (2018). And to convict Lundy of three counts of contributing to the delinquency of a minor, as Class A misdemeanors, the State was required to prove that Lundy was over eighteen years of age and that he had knowingly or intentionally encouraged, aided, induced, or caused J.F., S.C., and E.M. to commit an act of delinquency. I.C. § 35-46-1-8(a).

[10] On appeal, Lundy asserts that the evidence is insufficient "to establish that it was [Lundy] who committed the offenses." Appellant's Br. at 10. Specifically,

he asserts that the evidence demonstrates that the "case was built upon a web of statements, most of which were internally contradictory or incompatible with the other witnesses' testimony." *Id*. at 8. Accordingly, Lundy argues that the evidence establishes "that a co-conspirator was as likely as [Lundy] to have been the perpetrator of the robbery." *Id*. at 9. In essence, Lundy contends that S.C., E.M., and J.F. were not credible witnesses and that another witness' testimony "strongly suggests" that J.F. had robbed C.R. instead of Lundy. *Id*. at 13. But Lundy's argument is merely a request that we reweigh the evidence and assess the credibility of the witnesses, which we cannot do. *See Love*, 73 N.E.3d at 696.

[11] The evidence most favorable to the convictions demonstrates that Lundy worked with S.C., J.F., and E.M.—all of whom were minors—to rob C.R. Indeed, J.F. testified that, after he had returned home from S.C.'s house, S.C. and E.M. called him to tell him that they had "a plan to get some money." Tr. Vol. II at 236. J.F. also testified that he had talked to Lundy about S.C. and E.M.'s plan to get money, that the plan was for them to take money from C.R., and that Lundy was part of the plan. J.F. testified that S.C. and E.M. had texted him when they arrived at the intersection of Maple Drive and Venable Drive, which was near his house, and that "that's when [Lundy] got ready and then left" his house. *Id*. J.F. further testified that, after Lundy had returned to the house, Lundy told J.F. that he "forgot to give the keys back to" C.R. Tr. Vol. III at 55. Further, E.M. and C.R. both testified that Lundy was the person who had robbed C.R. And C.R. had identified Lundy as the person who had

robbed him from a photo array a couple of days after the robbery. Accordingly, we hold that the State presented sufficient evidence to support Lundy's conviction for robbery, as a Level 3 felony, and his three convictions for contributing to the delinquency of a minor, as Class A misdemeanors.

### *Sentencing*

[12] Although we affirm Lundy's convictions, we must remand to the trial court to correct a sentencing error. *See Comer v. State*, 839 N.E.2d 721, 726 (Ind. Ct. App. 2005) (holding that it is our duty to correct sentencing errors, *sua sponte*, if necessary). The trial court has broad discretion in sentencing, but "it must act within statutorily prescribed limits." *Lockhart v. State*, 671 N.E.2d 893, 904 (Ind. Ct. App. 1996). Here, during the sentencing hearing, the trial court stated that Lundy's twenty-year sentence was the court's "specific sentence on robbery[,] as a Level 3 felony." Tr. Vol. III at 163. And in its sentencing order on Count 1, the trial court sentenced Lundy to twenty years for his conviction for robbery, as a Level 3 felony. However, that sentence is four years above the sixteen-year maximum sentence permitted by statute. *See* I.C. § 35-50-2-5(b). Additionally, the trial court's order did not include any sentence for Lundy's habitual offender enhancement.[3] But a trial court "shall" sentence a person found to be a habitual offender to an additional, nonsuspendable term that is

---

[3] During the sentencing hearing, the trial court did not mention any sentence for the habitual offender enhancement. And the judgment of conviction does not include a sentence for that enhancement. However, the abstract of judgment includes a sentence of one day suspended for Count 5.

between six years and twenty years for a person convicted of a Level 3 felony. I.C. § 35-50-2-8(i)(1).

[13] There is no indication of how much of Lundy's twenty-year sentence is attributable to his Level 3 felony conviction and how much is attributable to the nonsuspendable portion that Lundy must serve for his habitual offender conviction. Thus, we must remand to the trial court with instructions for the court to impose a sentence of between three and sixteen years for the Level 3 felony conviction and with a habitual offender enhancement of not less than six years, to be identified and imposed separately.

[14] Affirmed and remanded with instructions.

Pyle, J., and Altice, J., concur.