## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2019, 7:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Oliver Younge
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Luke W. Reese, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 22, 2019 <br><br> Court of Appeals Case No. 18A-CR-2051 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. 49G03-1710-F5-39464 |

**Altice, Judge.**

# Case Summary

[1] Luke W. Reese appeals his convictions for criminal confinement, as a Level 5 felony; domestic battery, as a Class A misdemeanor; and battery, as a Class A misdemeanor, following a jury trial. Reese raises two issues for our review, which we restate as follows:

    1.    Whether the State denied him due process when it failed to preserve photographs and text messages as evidence.

    2.    Whether the State presented sufficient evidence to support his conviction for criminal confinement, as a Level 5 felony.

[2] We affirm.

# Facts & Procedural History

[3] Reese and G.R. lived in Indianapolis and had been married for twenty-six years. They have seven children together. On September 24, 2017, the family attended church, with Reese saying the mass and G.R. singing in the choir. Later that afternoon, G.R. drove to meet Jay Stanley, a man from the church with whom she was having an affair. When G.R. arrived, she got out of her vehicle and into Stanley's. The two then talked and kissed, and G.R. gave Stanley a massage.

[4] A short time later, G.R. observed Reese's car park on the street near where she and Stanley had parked. Reese got out of his vehicle and approached the driver's side of Stanley's car. Stanley opened the door to his vehicle, and Reese

began to yell at him. Reese kicked Stanley in the face. At that point, G.R. exited Stanley's vehicle, got into hers, and locked the doors. Reese approached G.R.'s car and said that they needed to talk. G.R. agreed, and G.R. and Reese separately drove to the parking lot of a nearby health center. Once they arrived, Reese yelled at G.R. to get into his car. G.R. complied. Reese then took G.R.'s phone and keys away from her.

[5] Reese began to drive away from the city. During the drive, Reese yelled at G.R. and, at some point hit G.R. in her left eye. Reese and G.R. arrived in a small town and stopped at a cemetery. While there, Reese yelled at G.R. and demanded the passcode to her phone, which she refused to give him. After a short time, Reese drove them back to their church. The two walked in through the back of the church and made their way to the sanctuary. Reese told G.R. to kneel in front of the alter. G.R. began to kneel on the cushion, but Reese told her to kneel on the marble. G.R. was "terrified," but she complied with Reese's demands "[b]ecause [she] didn't think that [she] had any options." *Transcript Vol. II* at 60.

[6] G.R. felt "hopeless," and she "didn't know how this whole thing was going to end." *Id*. at 61. She thought: "I'm going to leave the church and I'm just gonna go—I don't know where I'm gonna go, but I'm just going to walk." *Id*. She told Reese to tell their children that she loves them, and she got up and started walking to the front of the church. Reese ran after her, "grabbed her" by the shoulders, "pulled [her] back to the alter rail[,] and pushed [her] down on the floor", causing her pain. *Id*. G.R. landed on her knees. G.R. "was afraid

that [she] was going to be tortured and that it wasn't going to end for a long while." *Id.* at 63. Reese continued to ask G.R. for the passcode to her phone, but she would not give it to him. At one point, Reese grabbed G.R.'s hair "and pulled very hard." *Id.* at 64. Reese then put his hands around G.R.'s neck, applied pressure, and told her that he could choke her.

[7] Reese then decided to leave the church with G.R. and told her to get up. As the two were walking out the back of the church, he shoved G.R. down a few steps, and her left side hit the wall. When they arrived at the car, Reese shoved G.R. such that the left side of her head hit the car window, and he ordered her into the car. G.R. reluctantly complied "[b]ecause [she] didn't have a choice." *Id.* at 65. As he drove, Reese continued to yell at G.R. and ask for the passcode to her phone. He hit G.R. "several more times." *Id.* Reese hit G.R. in the stomach. He also hit G.R.'s head, which made her right ear hit the window. Reese was listening to heavy metal music, and he punched G.R.'s leg "in time to the music." *Id.* at 66.

[8] Reese drove two hours away to Auburn, where G.R.'s grandmother lived. He stopped at a church in an attempt to have G.R. make a confession. When no one answered, he drove G.R. to her grandmother's home. While there, he forced G.R. to confess her affair to her grandmother and uncle, and Reese acknowledged that he had hit G.R. Thereafter, it was determined that G.R. would return home with Reese. Before leaving, G.R. used the restroom, where she observed that her hair was a mess and that she "had bruising all around [her] left eye, [her] lips were swollen." *Id.* at 72. She also noticed that her right

ear was bleeding. G.R. did not call the police because she was "afraid and confused and kind of shocked." *Id*.

[9] Reese and G.R. arrived back at their home in Indianapolis at midnight. G.R. went up to her bedroom, and Reese went to the basement. A short while later, Reese came into the bedroom. He pulled the covers off G.R. and ripped off her clothes. Reese made G.R. stand up, and he took pictures of her while she was naked. Reese then went back to the basement. He later returned to the bedroom and got into bed with G.R. He punched G.R.'s right hip "several times" and then had intercourse with her. *Id*. at 78.

[10] The next afternoon, Reese and G.R.'s pastor came to their house. Reese gave G.R.'s phone to the pastor so that the pastor could "put it in a safe at the church." *Id*. at 83. The pastor recommended that G.R. stay somewhere else. Reese drove G.R. to his parents' house. On the way there, Reese stopped at a store and bought G.R. a flip phone. G.R. stayed at Reese's parents' house for several days. While she was there, she took pictures of her injuries using the flip phone.

[11] G.R. filed a report with the police on September 27 and requested a protective order. Officer Dean Roberts with the Indianapolis Metropolitan Police Department took G.R.'s statement. Officer Roberts noticed that G.R. had a bruise on her left eye and other marks and bruises on her body. Another officer took pictures of G.R.'s injuries, which included a bruise behind her right ear.

[12] The State charged Reese with two counts of criminal confinement, as Level 5 felonies (Counts I and II); one count of kidnapping, as a Level 5 felony (Count III); one count of domestic battery, as a Class A misdemeanor (Count IV); one count of battery, as a Class A misdemeanor (Count V); and one count of intimidation, as a Class A misdemeanor (Count VI).  On November 7, 2017, Reese filed a motion for preservation of evidence.[1]  The State agreed with the motion and instructed G.R., that same day, "not to do anything with [Reese's] phone or laptop."  *Appellant's Appendix Vol. II* at 49.  The trial court granted Reese's motion.

[13] The trial court held a jury trial on June 28 and 29, 2018.  During the trial, the State called Stanley as a witness.  Stanley testified that he is an IT consultant and that he tried to "scrub the computer clean for" G.R. after she had reported the crime to police.  *Transcript Vol. II* at 138.  He further testified that G.R. had asked him to delete pictures from the laptop, including pictures of Stanley and G.R.  The State also called G.R. as a witness.  G.R. testified that, at some point, her pastor had given her phone back to her.  She then testified that, prior to giving the phones to the police, she "may have deleted" some texts and pictures of her and Stanley off her personal iPhone.  *Id.* at 232.

[14] At the close of the State's case-in-chief, Reese moved for a directed verdict on Count VI, which the trial court granted.  The jury found Reese guilty of Counts

---

[1] Reese has not provided a copy of his motion in his appendix.

I, IV, and V but not guilty of Counts II and III. The trial court entered judgments of conviction accordingly and sentenced Reese to an aggregate term of three years, with one year on community corrections and two years suspended to probation. This appeal ensued.

## Discussion & Decision

### *Failure to Preserve Evidence*

[15] Reese first contends that the State denied him due process when it failed to preserve photographs and text messages from G.R.'s cell phones and Reese's computer, which evidence he asserts "could have been used to impeach [G.R's] testimony as to the causes of her injuries and credibility in general." *Appellant's Brief* at 11. We agree with the State that Reese has failed to preserve this issue for our review.

[16] Reese acknowledges that he "did not object or otherwise preserve the issue at trial." *Id.* at 12. Accordingly, he attempts to assert a claim of fundamental error. However, Reese has failed to provide any analysis of his claim within the context of the fundamental error rule. Indeed, Reese does not even cite authority that discusses or applies fundamental error. Reese simply makes a conclusory statement at the end of his argument that "the fact that this information was destroyed [is] sufficient for the Court of Appeals to find fundamental error[.]" *Id.* Because Reese did not cite authority or otherwise provide any argument in relation to the fundamental error doctrine, he has not made a cogent argument to support his contention. As such, the issue is

waived.  *See* Ind. Appellate Rule 46(A)(8)(a); *see also Hollingsworth v. State*, 987 N.E.2d 1096, 1099 (Ind. Ct. App. 2013) (simply asserting that error occurred and was harmful or of a constitutional dimension is insufficient to establish fundamental error), *trans. denied*.

### *Sufficiency of the Evidence*

[17]  Reese next contends that the State failed to present sufficient evidence to support his conviction for criminal confinement, as a Level 5 felony.  Our standard of review on a claim on insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence. *Id*.  We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Id*.

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).  To convict Reese of criminal confinement, as a Level 5 felony, the State was required to prove that Reese had knowingly confined G.R. without G.R.'s consent and that the confinement resulted in bodily injury to G.R.  Ind. Code § 35-42-3-3(b).

[18]  Reese first asserts that the State failed to establish that he had committed the offense knowingly.  A person acts "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so."  Ind. Code § 35-41-2-2(b).  Intent is a mental function that "can rarely be proved by direct evidence."  *Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018).  "Therefore, it is

well-established that a defendant's intent can be proved by circumstantial evidence." *Id.* "The fact finder is entitled to infer intent from the surrounding circumstances." *Sandleben v. State*, 22 N.E.3d 782, 791 (Ind. Ct. App. 2014), *trans. denied*.

[19] Here, the evidence demonstrates that, after Reese discovered G.R. with Stanley, he made G.R. get in his car. He then yelled at her and punched her as he drove her around the city. When they returned to the church, Reese forced G.R. to kneel on the marble floor. G.R. then attempted to leave because she was scared. But Reese ran after G.R., grabbed her, and pushed her onto the floor to keep her from leaving. Based on those circumstances, a reasonable fact-finder could infer that Reese had engaged in the conduct knowingly.

[20] Reese next asserts that the State failed to present sufficient evidence to demonstrate that he had confined G.R. "The word 'confine' is defined to mean to 'substantially interfere with the liberty of a person.'" *Mickens v. State*, 523 (Ind. Ct. App. 2018) (quoting I.C. § 35-42-3-1), *trans. denied*. "Any amount of force can cause a confinement because force, however brief, equals confinement." *Hopkins v. State*, 606 (Ind. Ct. App. 2001), *trans. denied*. Reese specifically asserts that "there was no testimony that [he] blocked any of the doors or barricaded them, or even stood in the path of [G.R.] while they were in the church." *Appellant's Brief* at 13. But contrary to Reese's assertions, the evidence demonstrates that, as G.R. attempted to leave the church, Reese grabbed her by the shoulders, pulled her back into the church, and pushed her

down onto the ground. That evidence is enough to demonstrate that Reese substantially interfered with G.R.'s liberty.

[21] Reese also contends that the State failed to prove that his actions were done without G.R.'s consent. In particular, he asserts that the State failed to prove a lack of consent because G.R. made no objections while driving back to the church or otherwise "indicat[e] that she did not want to go into the church." *Id.* Be that as it may, even if G.R. had willingly entered the church, she later decided that she no longer wanted to be there because she was "terrified." *Transcript Vol. II* at 61. But Reese prevented her from leaving. Because G.R. attempted to leave due to her fear of Reese, and because Reese stopped G.R. from leaving, a fact-finder could reasonably conclude that G.R. had not consented to staying in the church.

[22] Finally, Reese contends that the State failed to prove that he had caused any bodily injury to G.R. We cannot agree. Bodily injury "means any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. It is well settled that "a conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016), *trans. denied*. Here, again, when G.R. attempted to leave the church, Reese grabbed her by the shoulders and pushed her body down such that her knees hit the marble floor. During trial, G.R. testified that it hurt both when Reese grabbed her shoulders and when her knees hit the floors. Accordingly, the State presented sufficient evidence to demonstrate that Reese's confinement of G.R. caused her physical pain.

[23] Still, Reese contends that, even if the State had presented sufficient evidence to support each element of criminal confinement, as a Level 5 felony, he "still would have been able to avail himself of the defense of being justified in his actions" because he believed that G.R. was suicidal and he was only trying to prevent her from harming herself. *Appellant's Brief* at 15. In essence, Reese asserts that he was justified in committing the offense because he was simply protecting G.R. However, the jury was not required to believe Reese's self-serving testimony. *See Fitzgerald v. State*, 26 N.E.3d 105, 110 (Ind. Ct. App. 2013). Rather, the jury was entitled to credit G.R.'s version of the events and find that Reese's actions had not been to protect her.

[24] We reject Reese's invitation to reweigh the evidence. The State presented sufficient evidence to support Reese's conviction for criminal confinement, as a Level 5 felony. Accordingly, we affirm Reese's conviction.

[25] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.