



FILED

Jul 19 2024, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Indianapolis Public Transportation Corporation d/b/a IndyGo Public Transportation,

*Appellant-Defendant*

v.

Norma Jean Bush, as Personal Representative of the Estate of Michael Rex Fergerson, Deceased,

*Appellee-Plaintiff*

---

July 19, 2024

Court of Appeals Case No.
23A-CT-1483

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49D06-1910-CT-41736

---

**Opinion by Judge Foley**

Judge Brown concurs and Judge Riley dissents with opinion.

**Foley, Judge.**

[1] This case involves a negligence action initiated by Norma Jean Bush, as Personal Representative of the Estate of Michael Rex Fergerson ("Fergerson"), Deceased ("the Estate"), against Indianapolis Public Transportation Corporation d/b/a IndyGo Public Transportation ("IndyGo") after Fergerson was struck by an IndyGo bus and later died of his injuries. A jury trial was held, and a verdict returned in favor of the Estate. IndyGo now appeals, raising two issues, which we consolidate and restate as: whether the trial court erred in denying IndyGo's motion for directed verdict because the video evidence indisputably established that Fergerson was contributorily negligent as a matter of law. Because we conclude that Fergerson was at least a proximate cause of his being struck by the bus, and therefore contributorily negligent, we reverse the trial court's denial of IndyGo's motion for directed verdict and remand to enter judgment in favor of IndyGo.

## Facts and Procedural History[1]

[2] IndyGo is a common carrier, and its buses are open to the public, serving riders of all ages and abilities. David Ross ("Ross") was the IndyGo driver who was

---

[1] Oral argument was heard on this case on May 16, 2024, in the Indiana Court of Appeals courtroom in Indianapolis, Indiana. We commend counsel on the excellent quality of their written and oral advocacy.

driving the bus that struck Fergerson on September 29, 2018. Ross obtained his commercial driver's license ("CDL") in December 2017 after passing a test. To prepare for the test, Ross used the 2017 version of the CDL study guide and also received training. The training included knowing how to ensure the safety of a drunk or disruptive passenger. Ross began his employment with IndyGo on January 7, 2018. Once he began his employment with IndyGo, Ross received more training and was required to be familiar with IndyGo's safety and training manual.

[3] Fergerson was sixty-three at the time of his death and was living with his mother, Norma Jean Bush. He had a dependence on alcohol throughout his life and had started drinking alcohol when he was eight years old. Although Fergerson had a driver's license, he also had an IndyGo bus pass and would use the bus for transportation for the things he needed to do. Fergerson also had a history of sciatica, which is a painful condition usually caused by the lumbar spine when a disc herniation affects the nerves. This condition causes a pain that goes from the buttocks down the leg, and it can be excruciating. Sciatica could make it difficult for a person to stand up or walk.

[4] On the date Fergerson was struck by the IndyGo bus, September 29, 2018, Fergerson had been sober for eight days but began drinking again on the morning of September 29. That morning, Fergerson was "found on a sidewalk by [a] passerby" who was "concerned regarding [Fergerson's] nonresponsiveness" and "state of confusion." Appellant's App. Vol. III p. 4. Fergerson was taken to the hospital, and medical records reflect "that he was

intoxicated" and "was confused[,] . . . uncoordinated, . . ." and "did not perform well in . . . the finger-to-nose test" or the "heel-to-shin test." *Id*. at 4–5. Fergerson reported to the doctors "that he had been drinking that morning" and had "already finished a half container of vodka and that he typically would drink a pint to a pint and a half of vodka per day." *Id*. at 5. When the hospital released Fergerson, "he was still mildly intoxicated." *Id*. at 6.

[5] That evening, Fergerson called his mother around 7:00 p.m. and told her he had been at the grocery store. At 6:58 p.m., IndyGo bus driver Christine McLaughlin ("McLaughlin") pulled up to the Lafayette Square Mall bus stop. Fergerson was sitting on a bench near the stop, and he could be seen from the bus's video monitoring system closing a liquor bottle and then placing it in his inside jacket pocket. McLaughlin told Fergerson, "[y]ou're not coming on here with that liquor bottle" and then pulled away from the curb. Appellant's App. Vol. II p. 162.

[6] Approximately thirty-six minutes later, at 7:35 p.m., an IndyGo bus driven by Ross pulled up to the same stop. As Ross approached the bus stop, Fergerson was still seated on the bench at the bus stop, as can be observed from the bus's video monitoring system. Ross pulled forward past the bench where Fergerson was seated, and at 7:35:45 p.m., Fergerson can be seen from the curb-side view still seated. He then slowly stands up from the bench at 7:35.54 p.m. During this time, two passengers disembarked from the bus, and at approximately 7:36 p.m., Fergerson began to approach the front door of the bus but did not reach the door before the bus began to drive away at 7:36.03 p.m. As the bus pulled

away, Fergerson raised his arm, reaching toward the moving bus. While Fergerson was still standing on the sidewalk, the video showed that his arm made contact with the moving bus. Ferguson's body was spun around, and he fell from the sidewalk into the street and under the moving bus. The rear wheels of the bus ran over him, causing severe injuries. He was taken to the hospital and received treatment for his injuries; however, he was eventually removed from life support and died from his injuries on October 12, 2018. The cause of death was listed as "complications from" "blunt force trauma" injuries. Tr. Vol. 3 pp. 35–36. His medical records reflected that, at the time of the accident, Fergerson had a blood alcohol concentration within the range of approximately 2.56 to 2.83, which was over three times the legal limit to drive.

[7] On October 4, 2019, the Estate filed a complaint for damages against IndyGo and Ross and sought a jury trial. On December 16, 2019, IndyGo and Ross filed an answer and raised as an affirmative defense that the Estate "is barred from recovery as . . . Fergerson was contributorily negligent." Appellant's App. Vol. II p. 39. On September 27, 2022, the parties filed a joint stipulation that Ross was dismissed as a defendant without prejudice.

[8] On April 18, 19, and 20, 2023, the trial court held a jury trial. At trial, no eyewitness testified regarding Fergerson's conduct immediately before being struck by the IndyGo bus. The only evidence regarding Fergerson's conduct is the video from the bus, which was played for the jury. Ross testified regarding the training he received from IndyGo, and the safety and training manual used. He was required to know and follow the contents of the manual. Ross agreed

that his bus was open to the public and to riders of all ages, races, and abilities. Ross also agreed that he was taught through his training that passengers "deserve the most courteous and attentive treatment" that could be given. Tr. Vol. 2 p. 137. He knew the safety rules were mandatory and was taught early in his training that his number one duty as a driver was the safety of the passengers. As part of ensuring this safety, drivers were supposed to maintain a safety perimeter whether in motion or stopped at a passenger stop.

[9] Ross had not seen Fergerson before the incident at issue. Ross testified that the fact that Fergerson had been drinking had no effect on what Ross did while at the bus stop or in pulling away. Ross knew he may occasionally encounter drunk or disruptive riders, and that it was his responsibility to ensure those riders' safety. He was trained and was required to "allow extra time for the elderly and disabled" for safety and not to try to rush anyone. *Id*. at 154. He acknowledged his safety training required making sure that everyone was completely on or off the bus before he shut the door, and that the primary purpose of the rule was for passenger safety. He also acknowledged that he had a responsibility to ensure that everyone was completely clear of the bus before moving the bus.

[10] Ross was trained on "eye lead time," which requires the bus driver to assess the bus stop as it is being approached by the bus driver. *Id*. at 141. On approach, the driver should look for who is at the bus stop and who might want to ride the bus. Ross agreed that there was no rule that required people wanting to board the bus to be standing waiting to board when people get off the bus. Ross knew

that the IndyGo buses have blind spots behind the bus and on each side of the bus that he would have to account for, whether moving or stopped and whether he was picking up or dropping off passengers. One of the ways he had been trained to account for someone who may be in his blind spot was to thoroughly check his side mirror on the passenger-side front corner to confirm whether anyone was in his blind spot. The bus's side mirrors were the only equipment to assist the driver in seeing down the side of the bus, so Ross knew he had to rely heavily on his mirrors. Ross could not recall whether, on the date of the incident, he had confirmed the proper alignment of the mirrors on the bus.

[11] Ross drove an IndyGo bus with two doors, one at the front of the bus and one at the middle of the bus. Passengers are required to enter the bus through the front door, which is where they pay the fare. Ross knew that the window next to the front door on his bus was tinted, which limited his visibility, and he had to account for that limited visibility for safety purposes. On the day of the incident, when Ross stopped at the Lafayette Square Mall stop, he testified that he only checked his mirrors for a "split second, I guess" and did not see Fergerson as he approached the bus. *Id*. at 146.

[12] When Ross pulled up and stopped at the bus stop, Fergerson was on the side towards the rear of the bus. Ross admitted that Fergerson was seated at the bus stop before and when Ross pulled up and that this was not a situation in which Ross pulled away from the bus stop because he was trying to prevent Fergerson from boarding. Ross also testified that Fergerson's drinking and intoxication played no role in what Ross did when he was at the bus stop or in leaving the

stop. Ross did not see Fergerson before the incident occurred or when he was approaching the stop. Ross further testified that he did not see Fergerson sitting at the bus stop, did not see him get up, did not see him approach the bus, did not see him near the door, did not see him fall down, and did not see him get run over. Ross learned about this incident when he was on a break later in the evening, and the first time Ross saw Fergerson was after the incident when he watched the video. In viewing the video, Ross acknowledged that Fergerson stood up, retrieved his packages, stepped toward the bus, and made it all the way to the side tinted window, which was directly next to the front door, before the bus started moving. From viewing the video, Ross also acknowledged that Fergerson took seven steps and was about two feet from the front door when Ross pulled away from the bus stop. Ross agreed that, by the time the last passenger got off the bus, Fergerson was already standing and already moving towards his bus.

[13] IndyGo moved for directed verdict under Trial Rule 50 at the conclusion of the presentation of all evidence. That same day, IndyGo filed a written brief in support of the motion, and the trial court verbally denied the motion. The parties filed the final jury instructions. Final Instruction 42 provided that "[i]f you decide that . . . Fergerson's own negligence contributed to the harm Plaintiff claims to have suffered and that . . . Fergerson's negligence was a responsible cause of the harm, return your verdict for IndyGo and against Plaintiff in this case and deliberate no further." Appellant's App. Vol. II p. 70.

[14] The jury returned a verdict in favor of the Estate for $661,283.47 in reasonable medical and hospital expenses and $5,338,716.60 for loss of love and companionship, which combined for a total verdict of $6,000,000.00. On April 28, 2023, the parties filed a Joint Stipulation for Entry of Final Judgment, under which they agreed that, under the Adult Wrongful Death Statute, Indiana Code section 34-23-1-2, the statutory cap for loss of love and companionship was $300,000.00. The parties further agreed that IndyGo, as a governmental entity, was entitled to a statutory cap of $700,000.00 under the Indiana Tort Claims Act, Indiana Code section 34-13-3-4. The parties agreed that the trial court should enter judgment for $300,000.00 for loss of love and companionship and $400,000.00 for reasonable medical and hospital expenses, for a total of $700,000.00. The parties agreed that "by entering into this Joint Stipulation, neither party waives their respective rights for judicial review of the verdict including under Trial Rule 59, Trial Rule 60, or the Rules of Appellate Procedure." *Id*. at 72. Additionally, they agreed that "neither party waives their right to appeal any issue properly raised in the pre-trial motion practice, the jury trial, or the post-trial motion practice." *Id*. The trial court entered final judgment pursuant to Trial Rule 58. IndyGo filed a motion to correct error and a brief in support of the motion, and the Estate filed a statement in opposition to the motion to correct error. The trial court denied the motion to correct error, and IndyGo now appeals.

## Discussion and Decision

[15]  IndyGo appeals the denial of its motion for a directed verdict. Indiana Trial Rule 50(A) provides that "[w]here all or some of the issues in a case tried before a jury . . . are not supported by sufficient evidence . . . the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict." A party may move for a directed verdict "after all the parties have completed presentation of the evidence upon any one or more issues[,]" or "after all the evidence in the case has been presented and before judgment." Ind. Trial Rule 50(A)(2), (3). The purpose of a Trial Rule 50(A) motion for a directed verdict is to test the sufficiency of the evidence presented. *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1131 (Ind. Ct. App. 2019), *trans. denied*. "When ruling on a Rule 50(A) motion, a judge may assess both the quantity and quality of the evidence . . . but may not weigh the conflicting evidence or assess witness credibility; these are fact-finding functions within the jury's sole province." *Cosme v. Clark*, 232 N.E.3d 1141, 1148 (Ind. 2024).

[16]  "The standard of review on a challenge [involving] a directed verdict, also known as judgment on the evidence, is the same as the standard governing the trial court in making its decision." *Denman v. St. Vincent Med. Grp., Inc.*, 176 N.E.3d 480, 492 (Ind. Ct. App. 2021), *trans. denied*. "[B]ecause trial courts do not weigh evidence or assess witness credibility on directed verdicts, we must apply de novo review." *Cosme*, 232 N.E.3d at 1152. The record on appeal "alone is enough for a reviewing court to assess whether, without any weighing,

the evidence supports any reasonable inference in favor of the nonmovant." *Id*. The de novo standard of review aligns with our summary judgment standard of review and with the federal approach. *Id*.

[17] Upon appellate review of a trial court's ruling on a motion for judgment on the evidence, the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 839 (Ind. 2012). "A motion for judgment on the evidence should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Overshiner*, 119 N.E.3d at 1131 (citations omitted). Judgment on the evidence is proper if the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation. *Id*.

[18] When a tort claim is brought against a governmental entity such as IndyGo,[2] the common law defense of contributory negligence remains applicable under Indiana Code section 34-51-2-2. "Thus, if a plaintiff is negligent to even a small degree and that negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to his action." *Whitmore v. S. Bend Pub. Transp. Corp.*, 7 N.E.3d 994, 997 (Ind. Ct. App. 2014) (citing *Funston v. School Town of Munster*, 849 N.E.2d 595, 598 (Ind. 2006)), *trans.*

---

[2] It is undisputed that IndyGo is a municipal corporation and, therefore, a governmental entity.

*denied*. This is true even though when a claim is against a nongovernmental entity, any fault of a plaintiff will only operate to reduce the damages he might obtain. *Id*.

[19] "[I]t is well established that a plaintiff is 'contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety.'" *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 453 (Ind. 2019) (quoting *Hill v. Gephart*, 54 N.E.3d 402, 406 (Ind. Ct. App. 2016), *clarified on reh'g, trans. denied*). Because "[n]egligence depends upon the lack of reasonable care that an ordinary person would exercise in like or similar circumstances," "contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Id*. Generally, contributory negligence is a question of fact for the jury. *Id*. However, whether a person was contributorily negligent is a question of law "if the facts are undisputed and only a single inference can be drawn therefrom." *Id*.

[20] Here, there was no eyewitness testimony about the incident, and the only evidence regarding the actions of Fergerson was the video evidence from the bus's video monitoring system. As to video evidence, our Supreme Court has stated, "[w]hile technology marches on, the appellate standard of review remains constant." *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). If the video evidence is indisputable as to a determinative issue, we will reverse the judgment. *See id.* Doing so is consistent with our standard of review because,

as the Indiana Supreme Court has explained: "Where 'video evidence indisputably contradicts the [fact-finder's] findings, relying on such evidence and reversing the [fact-finder's] findings do not constitute reweighing.'" *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022) (quoting *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017)). A contradiction is indisputable if "no reasonable person could view the video and conclude otherwise." *Id.* Indisputability depends on "whether the video is grainy or otherwise obscured, the lighting, the angle, the audio and whether the video is a complete depiction of the events at issue, among other things." *Id.* But if the video is "not clear or complete or is subject to different interpretations," then the fact-finder receives the usual deference. *Id.*

[21] IndyGo argues that the trial court erred when it denied IndyGo's motion for a directed verdict because the video evidence indisputably established that Fergerson was negligent "to at least some degree in reaching out to touch a moving bus." Appellant's Br. p. 21. IndyGo asserts that Fergerson's action of reaching out to the bus as it was moving made him contributorily negligent as a matter of law, and therefore, the trial court erred in denying its motion for a directed verdict. IndyGo contends that the indisputable video evidence revealed that Fergerson missed the first bus driven by McLaughlin, and when the second bus driven by Ross started to drive away, Fergerson "flung his arm at the moving bus, leaning toward it[,]" which led to him falling in the path of the bus's wheels. *Id.* at 26. Because even a slight degree of negligence on the part of the claimant bars a claim against a government entity, IndyGo

maintains that the uncontroverted evidence demonstrated Fergerson was contributorily negligent.

[22] In *Funston v. School Town of Munster*, 849 N.E.2d 595 (Ind. 2006), the plaintiff sued a public school after incurring injuries caused by a fall when he leaned backwards while sitting on the top row of a set of bleachers. *Id*. at 599. The plaintiff had been at the gym for several hours, watching basketball games while sitting on lower rows on the bleachers, but he moved to the top row of one of the bleachers for a later game, where he leaned back, falling backwards off the bleachers and sustaining injuries. *Id*. It was clearly visible that there was no back railing for spectators sitting on the top row, but the plaintiff leaned back anyway because he "thought there was something back there[.]" *Id*. Our Supreme Court rejected the plaintiff's arguments that a reasonable spectator could be distracted by the game and lean back inadvertently, reasoning that, although it was understandable that the plaintiff would be distracted by the game, being understandable did not "equate with being completely free of all negligence." *Id*. at 600. Therefore, the Court found "from the undisputed facts that only a single inference [could] reasonably be drawn—that the plaintiff "was negligent to some degree"—which was "enough to establish the common law defense of contributory negligence as a matter of law." *Id.* Further, the Court held that the defendant did not need to establish that the plaintiff's negligence was the *only* proximate cause, only that it was *one* of the proximate causes and that the act of "lean[ing] backwards before ascertaining whether there was

something to lean on . . . proximately contributed to [the plaintiff's] injuries as a matter of law." *Id.*

[23] In *Hoosier Mountain Bike Association, Inc. v. Kaler*, 73 N.E.3d 712 (Ind. Ct. App. 2017), a mountain biker lost control of his bike on a city-owned trail, and after the city's summary judgment motion based on claims of contributory negligence was denied, this court, on appeal, concluded that the plaintiff was contributorily negligent as a matter of law. *Id*. at 720. In finding the plaintiff contributorily negligent, we found that the plaintiff "knew and understood the precautions a reasonably prudent mountain biker should take—inspect the trail feature prior to riding it—but chose not to follow them[,]" which resulted in him falling and causing injuries. *Id*. at 719. Based on the designated evidence, this court held that it could not conclude that the plaintiff was "completely free of all negligence" and therefore, he was contributorily negligent, which barred his claims. *Id*. at 719–20.

[24] In both *Funston* and *Kaler*, the plaintiffs' actions were found to make them contributorily negligent because neither plaintiff was completely without fault and both plaintiffs chose not to act as a reasonably prudent person would have. The Estate argues that these cases are not applicable to the present case because the cases both concerned stationary features where the plaintiffs had ample time and opportunity to take notice of the conditions, whereas here, the bus was parked and then suddenly moved away. The Estate contends that such movement created a situation unlike that of *Funston* and *Kaler* that Fergerson did not have ample time to notice. We find this argument unavailing.

Fergerson was an experienced bus rider who often rode the bus and should have been aware that reaching out toward the moving bus was not how a reasonably prudent person would act.

[25] The undisputed video evidence revealed that after the bus came to a stop, Fergerson got up from the bench, swayed a bit, and then walked toward the bus. When he got within a few feet of the front door of the bus, the bus began to move and pull away from the bus stop. At that time, Fergerson reached out toward the moving bus and lost his balance, which caused him to fall into the bus and subsequently be run over by the rear wheels of the bus. Contrary to the Estate's argument that Fergerson was not negligent, the undisputed evidence inescapably leads to the reasonable inference that Fergerson acted unreasonably in the face of a clearly-visible threat: his conduct in reaching out toward a moving bus demonstrated a lack of reasonable care that an ordinary person would exercise in like or similar circumstances, particularly in light of the fact that he suffered from sciatica, which can affect a person's mobility, and the fact that he was intoxicated at the time. "[C]ontributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Murray*, 128 N.E.3d at 453. Based on the evidence, we cannot conclude that Fergerson was "completely free of all negligence." *See Funston*, 849 N.E.2d at 600. We, therefore, find from the undisputed evidence that only a single inference can reasonably be drawn: Fergerson was negligent to some degree,

and this was enough to establish the common law defense of contributory negligence as a matter of law.

[26] The Estate argues that the evidence demonstrated that Fergerson's action was not the sole proximate cause of his injuries and essentially asserts that the evidence may be interpreted to show that Ross's negligence, not Fergerson's, was the only proximate cause. We disagree. As our Supreme Court held in *Funston*, IndyGo did not need to establish that Fergerson's negligence was the only proximate cause of his injuries, only that it was one of the proximate causes. *Id.* "An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Id.* (citing *Rhodes v. Wright,* 805 N.E.2d 382, 388 (Ind. 2004); *Vernon v. Kroger Co.,* 712 N.E.2d 976, 981 (Ind. 1999); and *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind. 1983)). The evidence revealed that Fergerson failed to exercise, for his own safety, that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would have exercised, that his conduct exposed him to a danger which a reasonable person exercising due care for his own safety would have avoided, and that his failure to exercise reasonable care was at least one of the proximate causes of his injury. Even if Ross acted negligently, "[t]here can be multiple proximate causes of a resulting event[,]" and "[t]he defense of proximate cause requires only that a plaintiff's negligence be 'a' proximate cause." *Funston*, 849 N.E.2d at 600. Therefore, because we find that

Fergerson's actions were a proximate cause of his injury, the Estate's contentions of Ross's alleged negligence do not negate Fergerson's negligence.

[27] Because we find that Fergerson was negligent to some degree, we conclude that the common law defense of contributory negligence was established as a matter of law. We also find that the undisputed evidence established as a matter of law that such negligence was a proximate cause of the claimed injuries. We, therefore, conclude that the trial court erred when it declined to find that the defense of contributory negligence applied and denied IndyGo's motion for directed verdict. *See Funston*, 849 N.E.2d at 598 n.2 ("Under the common law defense of contributory negligence, a plaintiff may not recover if guilty of any negligence, no matter how slight, that proximately contributes to the claimed injury.").

[28] Reversed.

Brown, J., concurs.

Riley, J., dissents with opinion.

ATTORNEYS FOR APPELLANT

Bradley M. Dick
Wandini Riggins
Bose McKinney & Evans, LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Bradford J. Smith
Ken Nunn Law Office
Bloomington, Indiana

**Riley, Judge, dissenting.**

I respectfully dissent from the majority's opinion which reversed the trial court's denial of IndyGo's motion for a directed verdict based on the fact that Fergerson was at least a proximate cause of his being struck by IndyGo's bus, and therefore contributorily negligent. As acknowledged by the majority, our appellate review of the trial court's denial of IndyGo's motion must consider only the evidence and reasonable inferences most favorable to the nonmoving party. *See Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 839 (Ind. 2012). As such, "[a] motion for judgment on the evidence should be granted only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1131 (Ind. Ct. App. 2019), *trans. denied*.

In support of its motion for a directed verdict, IndyGo relied on the common law defense of contributory negligence, which, if established, will operate as a complete bar to the Estate's action. As pointed out by the majority, "a plaintiff is contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety." *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 453 (Ind. 2019). Within the confines of our narrow standard of review and considering the evidence in favor of the Estate, as the nonmoving party, I conclude that IndyGo fell short of this burden of proof.

[31] The undisputed video evidence shown numerous times at trial and the testimony presented to the jury reflects that Ross acknowledged that Fergerson was sitting at the bus stop when Ross, driving the IndyGo bus, approached the curb. Ross pulled forward past the bench where Fergerson was seated. While two passengers disembarked from the bus, Fergerson started to walk to the front door of the bus, signaling an intent to embark. A mere fifteen seconds after having pulled up at the bus stop and having let two passengers disembark, Ross began to pull away from the curb while Fergerson was about two feet away from the bus. In light of the evidence, it can be reasonably inferred, as the jury did, that Fergerson, who suffered from sciatica which affected his mobility, was startled by the sudden and almost immediate acceleration of the bus pulling away from the curb and swung out his arm to steady himself and regain his balance. Fergerson acted reasonably under these circumstances for his "own protection and safety:" the sudden departure of the bus, a mere fifteen seconds after its arrival and within close proximity of Fergerson, contributed to his loss of balance, such that in an effort to regain his stability, he reached out to the nearest object, which, unfortunately, was the moving bus. *See Murray*, 128 N.E.3d at 453. This conduct does not amount to negligence but rather reflects an unfortunate series of events which led to Ferguson's death. Although I agree with the majority that the facts are undisputed, more than one reasonable inference can be drawn from them and therefore, the issue of contributory negligence in the cause before us is not a question of law as the majority concluded, but rather remains within the realm of the jury's determination. *See id.* Accordingly, as I cannot find any negligence, and consequently no

contributory negligence, on the part of Fergerson, I would affirm the trial court's denial of IndyGo's motion for a directed verdict.